IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CRIMINAL NO. 03-500-JR-1
CIVIL NO.

EVERETT HAYES,

Petitioner

v.

UNITED STATES OF AMERICA,

Respondent

PETITIONER'S MOTION TO AMEND 28 U.S.C. § 2255
MOTION  PURSUANT  TO FEDERAL RULES OF CIVIL PROCEDURE 15(a)

Everett Hayes
Reg.No. 27077-016
FCI SCHUYLKILL
P.O. BOX 759
Minersville, PA. 17954

Dated: May 23, 2008

## JURISDICTIONAL STATEMENT

The District Court's jurisdiction is invoked pursuant to Rule 12 of the Rules Governing Section 2255 Proceedings which states, "If no procedure is specifically prescribed by these rules, the district court may proceed in any lawful manner not inconsistent with these rules...and may apply the...Federal Rules of Civil Procedure ("F.R.Civ.P"). The Rules Governing Section 2255 do not specify a procedure for amending motions. Therefore courts have typically applied F.R.Civ.P. 15 to the amendment of a § 2255 motion. See e.g. United States v. Hicks, 283 F.3d 380 (D.C. Cir.2002).

Rule 15(a) provides in pertient part that, [a] party may may amend the party's pleading once as a matter of course at any time **before a responsive pleading is served.** In the present case, a timely § 2255 has been filed with the District Court and **no** responsive pleading has been filed by the Respondent's. Thus, the amendment is properly before the Court and should be granted.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY OF CASE

Familiarity  is presumed from the records of the proceedings
to date. Therefore, in the interest of brevity Petitioner merely
recites the facts as  germane  to the arguments raised herein.

In or about May of 2008, Petitioner (through counsel) filed
a timely Section 2255 motion in the District Court challenging
the constitutionality of his trial counsel's representation stemming
from counsel's failure to introduce Nextel phone records relevant
to the defense and his failure to interview and subpoena a witness
whose testimony would have corroborated Petitioner's defense.

This motion to amplify the timely filed § 2255 claims now
ensues.

## ARGUMENT

The Counsel Clause of the Sixth Amendment guarantees a defendant the right to counsel in a criminal case. The Supreme Court has defined the right to counsel as the right "to the effective assistance of counsel." Strickland v. Washington,466 U.S. 668 (1984). This right is necessitated by the rationalization that the the effective assistance of counsel is requisite to safeguard the right to a fair trial: "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." United States v. Cronic,466 U.S. 648,654 n.8 (1984).

The overarching test for effective assistance of counsel is whether counsel has subjected the prosecution's case to a meaningful adversarial testing. See Strickland,466 U.S. @ 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result").

> The right to effective assistance of counsel is thus the right
> of the accused to require the prosecution's case survive the
> crucible of meaningful adversarial testing. When a true adversarial
> criminal trial has been conducted - even if defense counsel may
> have made demonstrable errors - the kind of testing envisioned
> by the Sixth Amendment has occurred. But if the process loses
> its character as a confrontation between adversaries, the constitutional
> guarantee is violated.
>
> See Cronic,466 U.S. @ 656-57.

The premise of an adversarial system in which the Petitioner has an effective advocate for his side "underlies and gives

⌊substance⌋ to the Sixth Amendment. It is meant to ensure fairness
in the adversary criminal process. Unless the accused receives
effective assistance of counsel, a serious risk of injusti e
⌊pervades⌋ the trial itself." Id. 466 U.S. @ 655-56. This logic
undoubtedly applies to counsel's representation of Petitioner
(in this instance) before and during ghe trial proceedings.

In the Section 2255 motion Petitioner specifically challenged
the constitutionality of counsel's representation on the grounds
that counsel's performance fell below Sixth Amendment standards,
thus rendering the outcome unreliable, when counsel failed: (1)
present to the jury Petitioner's Nextel phone records from the
date of his arrest (which counsel had subpoenaed) and, (2) interview
and subpoena a witness who would have corroborated Petitioner's
defense.

Counsel's performance and any prejudice resulting therefrom
must be assessed under the two-prong standard enunciated in Strickland.
In order to prevail on a Sixth Amendment ineffective assistance
counsel claim, Petitioner must first establish that counsel's
performance was deficient, i.e., that it fell below an objective
standard of reasonableness under prevailing professional norms.
Id. 466 U.S. @ 688. Second, he must establish that he was prejudiced
by counsel's deficient performance, viz, that there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different. Id. @ 694.
A reasonable probability is a probability sufficient to undermine

confidence in the outcome. Id.

**Claim One: Counsel's representation fell below Sixth Amendment standards, thus depriving Petitioner of a fair trial, when counsel failed to introduce (into evidence) copies of Petitioner's phone records (subpoenaed by counsel) from the date of his arrest.**

### - Discussion

Prior to the trial proceedings, counsel subpoenaed Nextel for Petitioner's phone records for the billing period of October 10 - November 9, 2003. The Nextel records illustrated that on the morning of October 13, 2003, Petitioner was engaged in a phone call from 6:28 - 6:35am.

During the course of the trial proceedings as it related to the above mentioned morning hours, the Government presented the testimony of at least two witnesses whom testified to seeing Petitioner with a firearm at approximately 6:30am on October 13, 2003. Officer Robert Underwood testfied that he received a radio run at approximately 6:30am for shots fired in the 3000 block of Nelson Place South East. Upon his arrival, which according to the officer took an estimated 30-45 seconds, Petitioner was allegedly observed at a distance of 55 feet in possession of a firearm. Petitioner then allegedly fired several rounds in the direction of the officer while standing in the street of the 3000 block of Nelson Place and thereafter fled. Officer Ronald Hull testfied that he received a radio dispatch that shots were fired in the 3000 block of Nelson Place. The officer noted

-6-

that he received the dispatch **after** the 6:15-6:20am roll call.
It took the officer, according to his testimony, less than a
minute to arrive at the scene. When the officer arrived at the
scene, he too testified that he allegedly witnessed Petitioner
at an estimated 20 feet away in possession of a firearm. According
to Officer Hull, Petitioner ducked behind a white truck and ultimately
fled inside 3009 Nelson Place. A firearm was subsequently recovered
from a grassy area adjacent to the white truck.

At the conclusion of the trial the jury convicted Petitioner
of possessioning a handgun. Notably, the phone records were not
introduced into evidence in Petitioner's defense.

### - Deficient Performance

The central issue before the court in this respect is whether
counsel rendered ineffective assistance when he failed to present
evidence as to how Petitioner's phone records from the date of
his arrest would have likely affected the jury's perception of
the testimony of the Government's witnesses whom testified to
witnessing Petitioner with a handgun on the morning of his arrest.

Under Strickland, the court determines first whether counsel's
performance was deficient. Id. 466 U.S. @ 687. Counsel's performance
was deficient if, considering all of the circumstances, it fell
below the objective standard of reasonableness under prevailing
professional norms. Id. @ 688. Even if counsel's decision (not
to introduce the phone records) could be considered one of strategy,

-7-

that does not render it immune from attack - the relevant question is whether the strategic choice was "reasonable." See Roe v. Flores-Ortega,528 U.S. 470,481 (2000). A purportedly strategic decision is not objectively reasonable when counsel has failed to investigate his options and make a reasonable choice between them. See Horton v. Zant,941 F.2d 1449,1462 (11th Cir.1991).

The phone records in this instance conclusively established that on October 13, 2003, Petitioner was in possession of his phone (presumably engaged in conversation) from at least 6:28-6:35am. As noted, only two of the Government's witnesses testified to actually seeing Petitioner with a handgun on the morning of the incident: Officers Underwood and Hull. The testimonies of both respective witnesses is contravened when viewed in the context of the phone records.

The relevant portion of Officer Underwood's testimony is the time in which he is alleged to have witnessed Petitioner with a firearm. This officer's testimony indicates that he received the radio run at approximately 6:30am and arrived at the scene, i.e., the 3000 block of Nelson Place within 30-45 seconds of receving the call. As soon as he arrived at the scene he witnessed (some 55 feet away) Petitioner in the 3000 block of Nelson Place allegedly in possession of a handgun.

The testimony of Officer Hull indicates that he received the dispatch some time after approximately 6:20am and arrived at the scene in an estimated one minute. Upon arrival, the officer testified

-8-

that he witnessed Petitioner approximately 20 feet away allegedly
in possession of a handgun. The officer further testified that
a weapon had been discoveered in the area where Petitioner had
kneeled behind a white truck before fleeing into the apartment
building.

The testimony of both officers would have been called into
question by the time in which the phone was in Petitioner's possession
as indicated by the phone records. The proximity of the time
denoted by the phone records and the times the officers alleged
to have seen Petitioner with the firearm clearly would have provided
the jury with a reason to pause and question the testimony of
the officers.

Under analogous circumstances, the court noted in <u>Hart v.
Gomez</u>,174 F.3d 1067 (9th Cir.1999)[1]/

> A lawyer who fails adequately to investigate, and to introduce
> into evidence, records that demonstrate his clients factual
> innocence, or that raise sufficient doubt as to that question
> to undermine confidence in the verdict, renders deficient
> performance.
> Id. @ 1070.

Like the records counsel failed to introduce in <u>Hart</u>, the
phone records in this instance were an important component to

---

1. In <u>Hart</u>, the defendant was charged with child molestation over an eleven
month period. A defense witness provided testimony contradicting the State's
allegations and also possessed detailed documentation to corroborate the
testimony. Defense counsel however failed to introduce the detailed documentation.
The court held that counsel provided ineffective assistance of counsel
where, <u>inter alia</u>, "[h]aving chosen to pursue [a particular] line of defense,"
counsel did not introduce readily-available evidence that would have corroborated
that line of defense, and there was no plausible strategic reason for his
not introducing the evidence. Id. 174 F.3d @ 1071.

Petitioner's defense. Accordingly, counsel's decision not to introduce the records - if it was a decision at all - was clearly unreasonable and is not entitled to the degree of deference normally accorded such decisions under Strickland.

- Prejudice

To succeed on his ineffective assistance of counsel claim, Petitioner must also show that he was prejudiced by counsel's failure to introduce the phone records into evidence. He must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different had the records been introduced. See Strickland, 466 U.S. @ 694.

The Government's case against Petitioner was far from compelling. As previously noted, the testimony of both officers would have been shrouded by doubt had the phone records been introduced into evidence. Counsel was also able to impeach the testimony of the officers. Officer Underwood was impeached with statements to Officer Hull, the crime scene officer, and by the omission of relevant information from his PD-119 statement. Specifically, Officer Underwood informed Officer Hull that he was at a different location when shots were fired than the location to which he testified on direct. The PD-119 statements made no reference to the officer witnessing sparks from the muzzle of the weapon as the officer testified to seeing on direct. Also, the PD-119 did not mention that shots were fired from 55 feet as the officer testified on direct. The

officers testimony also contradicted testimony by the crime scene
officer whom testified that no casings were found in the location
in which Officer Underwood stated that shots were fired. Moreover,
the jury's veridct of not guilty as to the Assaulting a Police
Officer While Armed suggest that the jury did not accept the
testimony of Officer Underwood because had the jury accepted
any portion of this witness's testimony it would have necessarily
had to convict Petitioner of Assaulting a Police Officer While
Armed. Officer Hull was impeached with his PD-119 and his PD-163
forms that he filled out in addition to his inconsistent statements
to the crime scene officer. Importantly, Officer Hull testified
under cross-examination that he saw 'something' in Petitioner's
hand when he ran into the apartment building which conflicted
with his testimony on direct that he had seen Petitioner with
a handgun. Lastly, despite the testimony of both officers (as
to witnessing Petitioner with a firearm), there were no fingerprints
lifted from the handgun recovered from the scene.

    Here, given the factual inconsistencies of both officers
testimony and the general timeframes in which the officers allegedly
witnessed Petitioner with a handgun, if the phone records had
been introduced the jury could not have found Petitioner guilty
of possessing a firearm beyond a reasonable doubt or at least
there is a reasonable probability that its verdict would have
been different. Because the phone records placed Petitioner's
cell phone in his possession during the time in which he was

-11-

allegedly witnessed with a firearm, and neither officer testified
that he had two objects in his hand, the introduction of the
records conceivably would have influenced the jury that the officers
had witnessed a phone in Petitioner's possession rather than
a firearm and the shots which were allegedly fired on the morning
of the incident could have been explained by the shots fired
by the two individuals during the attempted robbery of Petitioner.
When counsel fails to introduce this type of evidence, i.e.,
evidence that has the potential effect of causing the jury to
have reasonable doubt with respect to the defendant's guilt,
confidence in the outcome is necessarily undermined.

      In summation, as evidenced by the jury's verdict of not
guilty as to three of the four counts, the Government's case
against Petitioner was not so overwhelming that the outcome was
foregone conclusion nor is the fact of a different outcome had
the phone records been introduced into evidence.

**Claim Two: Counsel's representation fell below Sixth Amendment standards, thus depriving Petitioner of a fair trial, when counsel failed to interview and subpoena a witness who would verify Petitioner's defense.**

- Discussion

During the pre-trial stages (in or about December of 2003), Petitioner provided counsel with name and contact information of Mr.Croyshon Simms. Upon providing counsel with this information Petitioner advised counsel that Ms.Simms could provide data relevant to the events that transpired on the morning of Petitioner's arrest. Counsel endeavored to contact Ms.Simms **once** in December of 2003 shortly after he was given the contact information. No further attempts were made to reach this witness after the initial try was unsuccessful.

Despite his cognizance of the information possessed by Ms.Simms, counsel did not call this witness and merely permitted Petitioner's version of the events to be the only version heard by the jury. According to Petitioner, on the morning of October 13, 2003, an individual by the name of Willy and another taller black male stopped by Petitioner's mother's apartment at approximately 6:15-6:25am. The men, in an attempted robbery, ordered Petitioner to strip naked and kneel on the floor. Petitioner managed to flee the apartment (with his cell phone in hand). While he was exiting the apartment, several shots were fired by one of the attempted robbers. When Petitioner fled the building he called

-13-

Ms.Simms and explained to her in a hysterical state what had
occurred while he was hiding from the perpetrators and that she
should come and get him. This conversation went on from 6:28-
6:35am (as indicated by the Nextel phone records). Once Petitioner
emerged fom hiding (behind a white automobile), two more shots
were fired (presumably by the perpetrators). Petitioner then
fled back to his mother's apartment.

The jury **never** heard the corroborating testimony of Ms.Simms
and Petitioner was convicted of possessing a handgun.

### - Deficient Performance

Pretrial investigation is essential to the effective assistance
of counsel. A lawyer must engage in a reasonable amount of pretrial
investigation and at a minimum interview potential witnesses
and make an independent investigation of the facts and circumstances
of the case. See Nealy v. Cabana,764 F.2d 1173,1177 (5th Cir.1985).
In an similar context the court in United States v. Barbour,813
F.2d 1382 (D.C. Cir.1987) acknowledged,

> Only when reasonable investigation has been performed is
> counsel in a position to make an informed tactical decisions.
> It is especially important that counsel adequately investigate
> in order that at the very least he can provide minimally
> competent professional representation.
> Id. @ 1234

Ineffectiveness of counsel is clear if counsel fails to
investigate a plausible line of defense or interview an available
witness and present the testimony of that witness (if favorable)

-14-

to the jury. These can hardly be considered startegic choices
since counsel by his failure has not obtained the facts upon
which such a tactical decision could reasonably be made. See
e.g. United States v. Debango,780 F.2d 81,85 (D.C. Cir.1986).

    In the case sub judice, the deficiency of counsel's investigation
is manifest. Counsel was provided with Ms.Simms' work number,
home number, home address and cell phone number. Yet, no effort
was made to contact this witness after counsel's initial attempt to
do so in December of 2003. Counsel was aware that Ms.Simms was
a potential witness to the events which occurred on the morning
of Petitioner's arrest. In fact, Petitioner had informed counsel
that on the night before his arrest he had left Ms.Simms' residence
in Upper Marlboro, Maryland in route to his mother's apartment.
Ms.Simms had planned to stop by Petitioner's mother's apartment
the following morning before she went to work to retrieve hair
care products that Petitioner had purchased for her on the previous
night before his arrest. On the morning of the incident Ms.Simms
left her residence in Upper Marlboro and proceeded to Petitioner's
mother's residence to retrieve the hair care products. When she
arrived at the residence (3009 Nelson Place) at approximately
6:15am, she decided against stopping because she noticed two
black males standing on the steps of the building. She then proceeded
a relative short distance to her sister's residence on 19th and
Minnesota Avenue S.E. Soon after she arrived at her sister's
residence, she received a phone call from Petitioner who, in a state

-15-

of hysteria, explained to her that he had been the victim of
an attempted Robbery and had managed to flee the perpetrators
and had planned to hide until she could come and get him. By
the time Ms.Simms arrived on the scene, the block had been barricaded.
She then managed to speak with the negotiator (Mr.Sinobia Brinkley)
and provided him with Petitioner's cell phone number. Once counsel
became aware that Ms.Simms was a witness to these events, he
was obligated to follow-up with Ms.Simms to determine what she
would say and whether she would give testimony in support of
the defense. See e.g. Riley v. Payne,352 F.3d 1313,1319 (9th
Cir.2003).

    Where, as here, no interview has taken place and counsel
does not put a witness on the stand, his decision will be entitled
to less deference than if had at least interviewed the witness.
See Lord v. Wood,184 F.3d 1083,1095 n.8 (9th Cir.1999). The reason
for this is simple: counsel who interviews a witness can rely
on his assessment of their articulateness and demeanor - factors
that the courts are not in a position to second-guess. Id. Counsel
in this instance never made an assessment of Ms.Simms as a witness
nor did he make a tactical decision as to whether she should
be called to testify.

    The factual circumstances of this case mirror those of Riley.
In Riley, the Ninth Circuit found the petitioner's attorney was
objectively unreasonable in failing to interview an eyewitness
to the events leading up to the shooting upon which the petitioner's

assault conviction was predicated. See id. @ 1319. There, the
petitioner, Riley, claimed he had acted in self-defense. See
id. @ 1315-16. In particular, he testified that the victim of
the shooting had verbally threatened  to shoot him just prior
to his shooting the victim. See id. Before his trial, Riley had
informed his attorney that a friend, Pettis, was with him at
the time the dispute erupted. See id. @ 1319. In connection with
the habeas proceedings, Pettis submitted a declaration that if
he had been called as witness, he would have corroborated Riley's
testimony that Riley had not approached the victim with his gun
drawn and that the victim had become angry and threatened Riley.
See id. @ 1317-18. Significantly, Pettis also stated that he
ran away and, as a result, did not observe the events immediately
preceeding the shooting. See id. The Ninth Circuit nonetheless
found Pettis to be a critical witness to lend credibility to
Riley's story, See id. @ 1320, and that it should have appeared
to a reasonable defense counsel that Pettis's testimony might
bolster Riley's tale. Id. @ 1319.

Here, as did the defendant in Riley, Petitioner relied on
a single theory of defense. Petitioner consistently maintained
throughout the pretrial and trial proceedings that he was the
victim of an attempted robbery on the morning of the incident
and that he had not  either possessed a handgun nor fired shots
on the morning of his arrest despite the contrariwise assertions
of the police officers. Without Ms.Simms, the only evidence presented

-17-

in Petitioner's trial in support of his theory was Petitioner's own uncorroborated testimony. Any potential evidence consistent with his testimony that he was the victim of an attempted robbery and that he had neither possessed a weapon nor fired any shots on the morning of his arrest was therefore critical. Id 352 F.3d @ 1320 (Pettis was critical witness to lend credibility to Riley's story...Pettis's testimony would have been consistent with [Riley's] account and would have created more equilibrium in the evidence presented to the jury). As in Riley, without any corroborating witnesses, [Petitioner's] bare testimony left him without any effective defense. Id. Under such circumstances, counsel's failure to interview Ms.Simms and call her as a witness was objectively unreasonable.

- Prejudice

In this context, prejudice exists if there is a reasonable probability that, but for counsel's failure to interview or call Ms.Simms as a witness, the result of the proceeding would have been different. See Strickland,466 U.S. @ 694. To etsablish prejudice caused by the failure to call a witness, Petitioner must show that the witness was likely to have been available to testify, that the witness would have given the proffered testimony, and that the witness's testimony created a reasonable probability that the jury would have reached a verdict more favorable to Petitioner. See e.g. Debango,780 F.2d @ 86.

In this regard, if counsel had interviewed Ms.Simms, he would have gleaned that Ms.Simms had witnessed two black males standing in front of 3009 Nelson Place at approximately 6:15am on the morning of Petitioner's arrest. Additionally, counsel would have learned that Petitioner had called Ms.Simms on the morning of the attempted robbery (as his trial testimony reveals) at 6:28am in a state of hysteria explaining to her what had occurred. Lastly, counsel would have known that Ms.Simms was willing to provide testimony for the defense because she had instructed Petitioner to provide counsel with all of her contact information so that counsel would know that she was available to testify (to the aforementioned facts) at trial if in fact she was called.[2]

As previously stated, the Government's case against Petitioner, though ostensibly sufficient to garner a conviction for possession of firearm, was not so impregnable that a guilty verdict was a foregone conclusion as evidenced by the jury's verdict of not guilty as to three of the four counts charged in the Indictment. More pointedly, the not guilty verdict with respect to the Assault of a Police Officer While Armed is significant. The acquittal

---

2. Noticeably, Petitioner has not submitted an affidavit from Ms.Simms. Since his incarceration, Petitioner has lost contact with Ms. Simms. Yet, he continues to make every effort (daily) to ascertain Ms.Simms whereabouts. The objective factors in the record, such as, the Nextel records which clearly demonstrate that Petitioner was engaged in conversation with Ms.Simms from 6:28-6:35am, Petitioner's reference to this fact in his trial testimony, and Ms.Simms brief conversation with Mr.Brinkley (the "Negotiator") at the crime scene, all of which indicate that this witness would have provided favorable testimony had counsel made reasonable attempt to **contact** this witness when in fact **she was available.**

of the Assault of a Police Officer While Armed offense strongly
implies that the jury disagreed with portions of the testimony
of both Officers Underwood and Hull. Resultingly, it cannot be
said that Ms.Simms corroboration of Petitioner's testimony would not
have had an insignificant effect on the jury's evaluation of
that evidence. To the contrary, given the absence of any evidence
supporting Petitioner's testimony as to the attempted robbery,
it cannot be deemed that Ms.Simms testimony would have been merely
cumulative of other evidence proffered by the defense. Rather,
Ms.Simms was a "critical witness to lend credibility" to Petitioner's
version of events, and her testimony "would have created more
⌊symmetry⌋ in the evidence presented to the jury." See Riley,352
F.3d @ 1320. Under such circumstances, as in Riley, there is
a reasonable probability that the outcome of the case would have been
different if the omitted testimony had been presented. See id.
@ 1321. Specifically, had the jury heard a witness corroborate
Petitioner's account of the attempted robbery, there is a reasonable
probability that they would not have found that Petitioner possessed
the handgun.

## CONCLUSION

    The record in this instance clearly demonstrates that the
fundamental fairness of the trial proceedings was diminished
by the errors of counsel. In assessing the errors of counsel,

the District Court need not decide whether one error or the other
would suffice, because Strickland, directs the court to consider
the "totality of the evidence before the judge or jury," keeping
in mind that "[s]ome errors [ ] have...a more pervasive effect on the
inferences to be drawn from the evidence, altering the entire
evidentiary picture." Id. 466 U.S. @ 695-96; See also Williams
v. Taylor,529 U.S. 362,397-98 (2000)(noting that under Strickland
the totality of the evidence should be assessed rather than individual
errors); Moore v. Johnson,194 F.3d 586,619 (5th Cir.1999)(holding
that court should examine cumulative effect of errors committed
by counsel across both trial and sentencing); Stouffer v. Reynolds,
168 F.3d 1155,1163-64 (10th Cir.1999)("Taken alone, no one instance
establishes deficient representation. However, cumulatively,
each failure underscores a fundamental lack of formulation and
direction in presenting a coherent defense").

Based on the foregoing, counsel's failure to introduce the
phone records into the trial proceedings and his failure to interview
Ms.Simms and call her as a witness undermined confidence in the
outcome and led to a breakdown in the adversarial process that
our system counts on to produce just results. See Strickland,
466 U.S. @ 696.

WHEREFORE, for the aforemntioned reasons and because the
record conclusively shows that Petitioner 'is' entitled to relief,

this Honorable Court should, consistent with Rule 8 of the Rules Governing Section 2255 Proceedings, order an evidenctiary hearing where the appropriate testimony can be heard and/or grant any other such relief deemed just and equitable by the District Court under the circumstances.

Respectfully Submitted,

/s/_____
Everett Hayes